1  LAWRENCE J. HILTON (State Bar No. 156524)
   lhilton@oneil-llp.com
2  KATHLEEN A. DONAHUE (State Bar No. 294226)
   kdonahue@oneil-llp.com
3  O'NEIL LLP
   19900 MacArthur Boulevard, Suite 1050
4  Irvine, California 92612
   Telephone: (949) 798-0500
5  Facsimile: (949) 798-0511

6  Attorneys for Defendant
   VERMILLION, INC.

7

8              **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**

10

11  QURE HEALTHCARE, LLC, a California    Case No.
    Limited Liability Company,
12                                        **DEFENDANT VERMILLION,**
                    Plaintiff,            **INC.'S NOTICE OF REMOVAL OF**
13                                        **CIVIL ACTION PURSUANT TO 29**
           v.                             **U.S.C. ¶¶ 1332, 1441 AND 1446**
14                                        **(DIVERSITY JURISDICTION)**
    VERMILLION, INC., and Does 1-20,
15                                        Action Filed:       August 26, 2014
                    Defendants.
16

17

18

19  **TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN**

20  **DISTRICT OF CALIFORNIA, AND TO ALL INTERESTED PARTIES AND**

21  **THEIR ATTORNEYS OF RECORD:**

22        Defendant Vermillion, Inc. ("Defendant") hereby provides notice pursuant to 28

23  U.S.C. sections 1441 and 1446 that it has removed a claim pending in the Superior Court

24  of the State of California, for the County of Marin, entitled *QURE Healthcare, LLC v.*

25  *Vermillion, Inc., et al.* Case No. CIV 1403265 (the "State Court Action").

26        The following is a short and plain statement of the grounds for removal and a listing

27  of pleadings to date:

28

## I.     PROCEDURAL HISTORY.

1.     The State Court Action was commenced on August 26, 2014.  True and correct copies of the Complaint, the summons and all other documents from the State Court Action case file are attached hereto as Exhibit A.  The Complaint and summons were first received by Defendant on August 28, 2014, when copies were personally delivered to Defendant's registered agent for service of process.

## II.    GROUNDS FOR REMOVAL.

2.     This case is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332, and is one which Defendant may remove to this Court pursuant to 28 U.S.C. §1441(b) in that it is a civil action between citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.

3.     Complete diversity exists in that Defendant, a corporation, is incorporated under the laws of the State of Delaware and has its principal place of business in Austin, Texas.  28 U.S.C. § 1332(c).  Conversely, none of the members of Plaintiff, a limited liability company, is a citizen of the State of Delaware or Texas.  The citizenship of the fictitiously-named Doe defendants is disregarded for purposes of determining whether diversity jurisdiction exists.  28 U.S.C. § 1441(a).  Complete diversity therefore exists.

WHEREFORE, Defendant respectfully requests this Notice of Removal be accepted as good and sufficient as required by law, and that the aforesaid State Court Action be removed from the Superior Court of the State of California for the County of Marin to the United States District Court for the Northern District of California, the district in which the State Court Action is pending, and that this Court assume full and complete jurisdiction thereof and issue all necessary orders and grant all general equitable relief to which Defendant is entitled.

#144518 v1

1    DATED:  September 26, 2014          O'NEIL LLP
                                         LAWRENCE J. HILTON
2                                        KATHLEEN A. DONAHUE

3

4                                        By:  _____
                                                   Kathleen A. Donahue
5                                        Attorneys for Defendant
                                         VERMILLION. INC.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   #144518 v1

1

## **DEMAND FOR JURY TRIAL**

2        Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Defendant hereby

3  demands a jury trial on all issues triable to a jury.

4  DATED: September 26, 2014      O'NEIL LLP

5                        LAWRENCE J. HILTON
KATHLEEN A. DONAHUE

6

7                     By: _____

8                       Kathleen A. Donahue
Attorneys for Defendant

9                     VERMILLION. INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

#144518 v1

4

# EXHIBIT A

| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF MARIN** | | |
|---|---|---|
| QURE HEALTHCARE, LLC | DATE FILED: | 8/26/2014 |
| PLAINTIFF(s) | CASE TYPE: | COMPLAINT |
| VS. | CASE SUBTYPE: | BREACH OF CONTRACT |
| VERMILLION, INC. | DATE OF LAST ACTIVITY: | 9/25/2014 |
| DEFENDANT(s) | DATE/TIME RUN: | 09/26/2014 04:02 PM |
| REGISTER OF ACTIONS | CASE NUMBER: | CIV 1403265 |

INVOLVED PERSON/PARTY AND ATTORNEY SUMMARY:

    QURE HEALTHCARE, LLC, A CALIFORNIA LIMITED LIABILITY CO is the PLAINTIFF and is represented by: AUGUST, ANDREW A.

    VERMILLION, INC. is the DEFENDANT and is represented by:

REGISTER OF ACTIONS:

| | |
|---|---|
| 08/26/2014 | CASE OPEN / ACTIVE STATUS HON ROY O CHERNUS |
| 08/26/2014 | FILING FEE PROCESSED: PLTF, QURE HEALTHCARE, LLC, CALIFORNIA LIMITED LIABILITY COMP - 435.00 |
| 08/26/2014 | COMPLAINT/FIRST PAPER COMPLAINT |
| 08/26/2014 | SUMMONS ISSUED AND FILED |
| 08/27/2014 | NOTICE OF ERRATA FILED BY ATTY ANDREW AUGUST OBO PLTF. |
| 09/03/2014 | HEARING CONFIRMED FOR: 11/06/2014 AT: 08:30 AM FOR APPEARANCE TYPE: OSCH IN DEPARTMENT: D06 |
| 09/03/2014 | HEARING CONFIRMED FOR: 12/08/2014 AT: 08:30 AM FOR APPEARANCE TYPE: OSCH IN DEPARTMENT: D06 |
| 09/03/2014 | HEARING CONFIRMED FOR: 01/20/2015 AT: 08:30 AM FOR APPEARANCE TYPE: CMGT IN DEPARTMENT: D06 |
| 09/25/2014 | ANSWER DEFT, VERMILLION, INC. |
| 09/25/2014 | FILING FEE PROCESSED: DEFT, VERMILLION, INC. - 435.00 |
| 09/25/2014 | APPEARANCE DROPPED FOR 12/08/2014 AT: 08:30 AM FOR APPEARANCE TYPE: OSCH IN DEPARTMENT: D06 DROP REASON: ANSWER FILED |
| 09/25/2014 | APPEARANCE DROPPED FOR 11/06/2014 AT: 08:30 AM FOR APPEARANCE TYPE: OSCH IN DEPARTMENT: D06 DROP REASON: ANSWER FILED |

Disclaimer: This Register of Actions is not an official court record.  For an official and/or certified record, visitors must obtain it from the Court.

1  BROWNE GEORGE ROSS LLP
   Andrew A. August (State Bar No. 112851)
2    aaugust@bgrfirm.com
   Kevin F. Rooney (State Bar No. 184096)
3    krooney@bgrfirm.com
   121 Spear Street, Suite 200
4  San Francisco, California 94105
   Telephone: (415) 391-7100
5  Facsimile: (415) 391-7198

6  Attorneys for QURE Healthcare, LLC

7

**FILED**

AUG 2 6 2014

~~~ ~~~~~, Court Executive Officer
~~~~~~ COUNTY SUPERIOR COURT
By: E. Clark, Deputy

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        COUNTY OF MARIN

10

11  QURE HEALTHCARE, LLC a California          Case No.
    Limited Liability Company,
12                                             **COMPLAINT**
                  Plaintiff,
13
          vs.
14
    VERMILLION, INC. and Does 1-20,
15
                  Defendants.
16

17         Plaintiff QURE Healthcare, LLC ("QURE") brings this action against Defendant

18  Vermillion, Inc. ("Vermillion") and alleges as follows:

19                           **INTRODUCTION**

20         1.      This action seeks to enforce a April 21, 2014 written agreement between plaintiff

21  QURE and defendant Vermillion ("Agreement") in which Vermillion was required to make total

22  payments to QURE in the amount of $355,000 plus expenses in exchange for healthcare related

23  services provided by QURE.  A true and correct copy of the Agreement is attached as Exhibit A

24  and incorporated herein, as though set forth in full.

25         2.      Based in San Rafael, plaintiff QURE is an industry leading healthcare company

26  with over 18 years experience providing reliable measures of clinical quality to doctors, other

27  providers, healthcare systems and policy makers.

28

**SUMMONS ISSUED**

FAXED

463639.1

COMPLAINT

3.      Pursuant to the Agreement, Vermillion engaged QURE to design, implement and complete a randomized clinical trial (RCT) for Vermillion's product, known as OVA1® using QURE's expertise and extensive contacts in the payor and academic community.

4.      QURE performed all services required pursuant to the Agreement.  However, after Vermillion made an initial payment of $213,000 per the terms of the Agreement, Vermillion has failed and refused to pay the balance due of $142,000 plus expenses required under by the Agreement.  Despite repeated requests, Vermillion has failed to make any additional payments due and owing under the Agreement and continues to refuse to do so, without justification.

5.      Accordingly, QURE brings this action for damages against Vermillion in the amount of $142,000 plus expenses.

## THE PARTIES

6.      Plaintiff QURE Healthcare, LLC is, and at all times relevant hereto was, a California corporation, licensed to do business in California.

7.      Plaintiff is informed and believes, and thereon alleges, that defendant Vermillion, Inc. is a Delaware corporation, licensed to do business in California.

8.      Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1 through 20, inclusive, and therefore sues said defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities once they have been ascertained.

9.      Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each of the Defendants was acting as the agent and representative of each of the other Defendants, and was acting within the purpose and scope of said agency and representation. Plaintiff is further informed and believes, and thereon alleges, that each of the Defendants authorized and ratified the conduct of each of the other Defendants that is herein alleged.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

10.      Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

463639.1

-2-

COMPLAINT

1      11.    Plaintiff entered into the Agreement with Vermillion.

2      12.    Pursuant to the terms of the Agreement Vermillion agreed to pay Plaintiff $355,000

3 plus expenses for services to be performed by Plaintiff.

4      13.    Plaintiff has performed all terms required under the Agreement, except for those

5 matters which have been excused.

6      14.    To date, Vermillion has only paid Plaintiff $213,000 of the required $355,000 plus

7 expenses.  Vermillion has breached the terms of the Agreement by failing to pay the remaining

8 sum of $142,000 plus expenses as required by the Agreement.

9      15.    Plaintiff has demanded, including in this Complaint as well as before its filing, that

10 Vermillion pay sum of $142,000 plus expenses as required under the Agreement, but Vermillion

11 has failed and refused, and continues to fail and refuse, to do so.

12      16.    As a result of Vermillion's breach of the Agreement, Plaintiff has suffered harm,

13 and has been damaged in an amount in excess of the jurisdictional minimum of this Court,

14 according to proof.

15      WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

16      1.    For compensatory damages where appropriate;

17      2.    For actual damages according to proof;

18      3.    For consequential damages where appropriate;

19      4.    For prejudgment interest at the highest rate allowed by law;

20      5.    For such other relief as is just and proper.

21

22 DATED: August 26, 2014        BROWNE GEORGE ROSS LLP

23                        Andrew A. August
                            Kevin F. Rooney

24

25                     By _____

26                            Andrew A. August
                            Attorneys for Plaintiffs

27

28

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*



FILED

AUG 26 2014

... ... TURNER, Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: E. Chais Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
VERMILLION, INC. and Does 1 to 20

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
QURE HEALTHCARE, LLC a California Limited Liability Company

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>SUPERIOR COURT OF CALIFORNIA, COUNTY OF MARIN<br>3501 Civic Center Drive<br>San Rafael, CA 94903 | CASE NUMBER:<br>*(Número del Caso):*<br>CIV 1403265 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Andrew A. August (SBN 112851) T: (415) 391-7100 F: (415) 391-7198
Browne George Ross LLP
121 Spear Street, Suite 200 San Francisco, CA 94105

| | | | |
|---|---|---|---|
| DATE:<br>*(Fecha)* | AUG 26 2014 | Clerk, by KIM TURNER E. CHAIS<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | American LegalNet, Inc.<br>www.FormsWorkflow.com | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

**ATTORNEY OR PARTY WITHOUT ATTORNEY** (Name, State Bar number, and address):
Andrew A. August (SBN 112851), Kevin F. Rooney (SBN 184096)
Browne George Ross LLP
121 Spear Street, Suite 200
San Francisco, CA 94105
TELEPHONE NO.: (415) 391-7100        FAX NO. (Name): (415) 391-7198
ATTORNEY FOR (Name):

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **MARIN**
STREET ADDRESS: 3501 Civic Center Drive
MAILING ADDRESS:
CITY AND ZIP CODE: San Rafael, 94903
BRANCH NAME:

CASE NAME: QURE Healthcare LLC v. Vermillion, Inc.

*FOR COURT USE ONLY*
RECEIVED
MARIN COUNTY
SUPERIOR COURT
2014 AUG 26  P 12:07

CASE NUMBER:
CIV 1403265

JUDGE:
ROY O. CHERNUS
DEPT:

| CIVIL CASE COVER SHEET | Complex Case Designation | |
|---|---|---|
| ☒ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☒ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is  ☒ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☒ monetary  b. ☐ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action (specify): 1
5. This case ☐ is  ☒ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: August 19, 2014

Andrew A. August
(TYPE OR PRINT NAME)        ▶        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]        **CIVIL CASE COVER SHEET**        Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36) Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

American LegalNet, Inc.
www.FormsWorkflow.com



**MARIN COUNTY SUPERIOR COURT** AUG 2 6 2014
P.O. Box 4988
San Rafael, CA 94913-4988

KIM TURNER, Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: E. Chris Daniel

| | |
|---|---|
| PLAINTIFF: *Qure Healthcare, LLC* | CASE NO. *CIV 1403265* |
| vs. | **NOTICE OF CASE MANAGEMENT CONFERENCE (CIVIL)** |
| DEFENDANT: *Vermillion, Inc.* | |

This case is subject to the Trial Court Delay Reduction Act, Government Code § 68600 et seq., and Civil Rules of the Uniform Local Rules of the Marin County Superior Court (hereafter MCSC Civil Rules).

Pursuant to California Rules of Court 3.734, this case is assigned to Judge *Chernus*,
Department *B*. This assignment is for all purposes.

MCSC Civil Rule 1.20 and CRC 3.110(b) and 3.221(c) requires that the Summons and Complaint, a copy of this notice, a blank Case Management Conference Statement form, and an Alternative Dispute Resolution (ADR) information package be served and that Proof of Service be filed within 60 days of the filing date of this Complaint. CRC 3.110(d) requires that defendants file responsive pleadings within 30 days of service, unless the parties stipulate to an extension of not more than 15 days.

1.  IT IS ORDERED that the parties/counsel to this action shall:

    a.  Comply with the filing and service deadlines in MCSC Civil Rules 1.19 and CRC 3.110, or APPEAR IN PERSON at the Order to Show Cause hearing on the dates set forth below:

        Hearing on Failure to File Proof of Service *11 / 6 / 14* 8:30 / 9:00 A.M.

        Hearing on Failure to Answer *12 / 8 / 14* 8:30 / 9:00 A.M.

    b.  Appear for a Case Management Conference on *1 / 20 / 15* 8:30 / 9:00 A.M.

2.  Telephonic appearance at Case Management Conference (CMC) may be available by contacting COURT CALL, an independent vendor, not less than five (5) court business days before the hearing date. Parties may make arrangements by calling (888) 882-6878. This service is subject to charges by the vendor.

3.  You must be familiar with the case and be fully prepared to discuss the suitability of the case for binding or non-binding arbitration, mediation, or neutral case evaluation. **Counsel must discuss ADR options with their clients prior to attending the CMC** and should be prepared to discuss with the court their authority to participate in ADR.

4.  Case Management Conference Statements must be filed and served on all parties, including the court, at least 15 calendar days before the CMC (CRC 3.725). **(A $49.00 sanction will be charged for late filing of a statement.)**

    **Case Management Conference Statement must be filed by** *1 / 5 / 15*

5.  All Law and Motion matters will be heard on the calendar of the assigned Judge. Tentative Rulings are available online by 2:00 p.m. on the weekday preceding the hearing date at *http://www.marincourt.org/civil_tentative.htm*. If you need to make other arrangements, please call (415) 444-7170.

*Distribution: Original - Court File; Canary - Plaintiff*

**FILED**

AUG 27 2014

KIM TURNER, Court Executive Officer
**MARIN COUNTY SUPERIOR COURT**
*By: C. Lucchesi, Deputy*

1  BROWNE GEORGE ROSS LLP
   Andrew A. August (State Bar No. 112851)
2   aaugust@bgrfirm.com
   Kevin F. Rooney (State Bar No. 184096)
3   krooney@bgrfirm.com
   121 Spear Street, Suite 200
4  San Francisco, California 94105
   Telephone: (415) 391-7100
5  Facsimile: (415) 391-7198

6  Attorneys for QURE Healthcare, LLC

7

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        COUNTY OF MARIN

10

11 QURE HEALTHCARE, LLC a California        Case No. CIV1403265
   Limited Liability Company,
12                                          **NOTICE OF ERRATA**
              Plaintiff,
13                                          Trial Date:  None Set
       vs.
14
   VERMILLION, INC. and Does 1 to 20,
15
              Defendant.
16

17         PLEASE TAKE NOTICE that Plaintiffs complaint filed on August 26, 2014 was

18 inadvertently filed without Exhibit A to the complaint.

19         Plaintiff's Exhibit A to the complaint is attached hereto as Exhibit A.

20

21 DATED:  August 27, 2014              BROWNE GEORGE ROSS LLP
                                        Andrew A. August
22                                      Kevin F. Rooney

23

24                                  By
                                        Andrew A. August
25                                      Attorneys for QURE Healthcare, LLC

26

27

28

467869.1



# EXHIBIT A



# Demonstrating the Clinical Utility of OVA1®
# for Coverage and Reimbursement

*Prepared for Vermillion*

*By QURE Healthcare, LLC*

April 11, 2014

Ex. A

## QURE Healthcare, LLC

QURE Healthcare is a team of experienced researchers and payment specialists who generate high quality evidence on clinical utility. QURE's proprietary technology, Clinical Performance and Value (CPV®) vignettes, quickly measures the impact of novel diagnostic tests on clinical practice. QURE is widely recognized as a leader in securing coverage and reimbursement and its accepted strategy secures C&R for molecular diagnostic companies. QURE's reliability is unchallenged and is supported by extensive validation substantiated in the elite peer-reviewed literature and presented at scientific meetings and public hearings.

## Vermillion

Vermillion has a protein-based blood test, OVA1®, which evaluates the likelihood that an ovarian mass is malignant prior to planned surgery. An elevated OVA1® test score may help the physician determine if the woman should be referred to a gynecologic oncologist. Studies have shown that women with ovarian malignancies experience better outcomes when they are operated on by a gynecologic oncologist. Thus, OVA1® clinical utility lies in its potential to provide clinically actionable data when physicians are deciding whether they should operate, or refer the woman on to a gynecologic oncologist, consequently contributing to better patient outcomes.

## QURE Proposal Objectives

QURE will work collaboratively with Vermillion to rapidly and systematically conduct a prospective randomized control research trial to generate evidence of OVA1® clinical utility. QURE's approach will ensure a rapid turnaround for Vermillion that, if successful, leads to a data driven discussion with CMS, as well as private payers targeting early coverage and reimbursement. QURE studies typically only take six months to complete, however the timing could be completed in four months if Vermillion would like to expedite the study[1].

QURE will test two hypotheses:

    1) Clinical practice, specifically decisions around surgery for potential ovarian cancer cases, will vary widely among gynecologists. This variation in practice will

---

[1] The abbreviated timing will depends primarily on securing a start date, the recruitment process and the level of Vermillion's involvement with writing the CPV® vignettes.

**Ex. A**

demonstrate the need for a new diagnostic, such as OVA1® to determine which women need to be referred to a gynecological oncologist surgeon.

2) OVA1® will improve the quality of care, as measured by the number of providers that correctly identify patients at higher risk for ovarian cancer and refer these patients to a gynecological oncologist prior to surgery thus ensuring that:

    a. Patients who are at low risk for ovarian cancer, per the OVA1® results can be operated on by OB/GYNs.

    b. Patients with high OVA1® results can be systematically identified and referred to a gynecological –oncologist surgeon.

    c. Unnecessary studies, procedures and other treatments are avoided

The final deliverables for this proposal include 2 manuscripts for peer-review publication (corresponding to the two hypotheses) and a presentation to Vermillion leadership on the findings by August 2014.

## Phase 1: Project Outline

The five steps of the study and timeline are diagrammed in Figure 1 and detailed below.
*Figure 1. Study Timeline and Overview*



**Step 1: Develop the Study Protocol, CPV® Vignettes and Receive Roster of Participating Physicians**
- QURE will design the study protocol using a randomized, controlled study model, and secure the Institutional Review Board (IRB) for approval. The study will be registered on www.clinical trials.gov. QURE will work with Vermillion to estimate the effect size and conduct power calculations to ensure an adequate sample size.

Ex. A

- QURE will prepare a survey of clinical practice characteristics to be included in the first round of data collection that will identify ownership, facility capabilities, payer profiles, education, training and patient volumes.
- QURE, jointly with Vermillion leadership and selected experts, will write nine cases[2] targeting several types of high-risk patients who would benefit from OVA1® results and a subsequent referral to a Gynecological Oncologist. For example, the 9 cases could represent three patients presenting with abdominal symptoms with a subsequent low OVA1® score, patients who can be treated by the OB/GYN; three patients with high-risk scores for whom referral to a gynecological oncologist is the appropriate level of care; and 3 cases with a co-morbidity, which would complicate decision making around whether the patient required specialized surgical care. QURE likes to engage external physician experts, such as Dr. Robert Bristow, agreed upon by Vermillion, to review the content and validity of the final CPV vignettes.
- Vermillion will recruit and pay (approximately) 150 OVA1® naïve obstetrician-gynecologists, (the final cohort is subject to the sample size calculations and selection of specific types of providers). QURE will prepare the recruiting materials. The exact sample size will depend on finalizing the hypotheses and calculating the effect size.

**Step 2: Baseline Assessment**
- Once the agreed upon number of physicians has been recruited by Vermillion, QURE will enroll all of the providers into the study and administer the first round of CPV® vignettes via QURE's online platform, during which each physician will be asked to complete three vignettes and a brief physician questionnaire.
- QURE will be responsible for all communication and study administration with the physicians regarding data collection.

**Step 3: Administer OVA1® Intervention**
- Working collaboratively with QURE, the sales/marketing team at Vermillion will design and intervene with a typical sales protocol to introduce OVA1®. QURE will work closely to help with this design, encouraging parsimony and targeting so that the clinical utility study includes opportunities to hone product message and accelerate uptake. There is flexibility regarding what the intervention entails. In other QURE studies, for example, physicians have been given with educational or marketing materials or a WebEx demonstration about the

---

[2] Three vignettes will be administered during every round of data collection (total of 6 in Phase I), plus three additional vignettes in the case of a third round of data collection (Phase II).

Ex. A

product, visit from a sales representative or access to the test in their daily practice.

- Approximately two to four weeks after baseline data collection, Vermillion, with support from QURE, will be responsible for administering this information to the "intervention" group: half of the original cohort that is randomly assigned to receive the intervention.

**Step 4: Post-Intervention Data Collection**

- Six weeks post-intervention, QURE will administer the second round of vignettes. All physicians will be able to "order" the results of the OVA1® test as they are taking each vignette.

**Step 5: Data Analysis and Final Reporting/Manuscript Preparation**

- QURE will conduct a pre-post analysis comparing practice patterns and performance of the intervention and control groups. This analysis will use the CPV® scores as the outcome variable and include basic bivariate analysis to determine differences across the two groups as well as a difference-in-differences regression analysis, controlling for physician characteristics, to identify significant differences across the two groups.
- QURE will prepare a presentation of the cumulative results for Vermillion leadership.
- The final deliverables will be two jointly prepared manuscripts: one exploring clinical utility, and a second one looking at variability of care. Both will be submitted for publication to a peer-reviewed journal. QURE will also provide its experience to support the CMS submission.

## Study Add-Ons:

**1) Payer Panel**

QURE suggests conducting a private payer panel concurrent with Step 1 to discuss the study design, leveraging the power of the experimental design with the authenticity of the study for the payers. QURE has experience assembling such payer panels and facilitating the discussion around developing a study for generating clinical utility data.

**2) OVA1® Experienced Arm of Physicians**

Past QURE clients have been interested in exploring the practice patterns of existing product users, defined as providers who have already used OVA1® into their daily practice. The CPV vignettes can capture very specific, actionable data about how physicians use OVA1®: the differences between more experienced

**Ex. A**

and newer users and how uptake is affected by different marketing tactics/materials; the use-patterns with increased familiarity and reliance on the test; the rates of adoption are all examples of data collected from this third arm The number of physicians for this additional arm will depend on the number of physician users Vermillion would like to include.

3) **Economic Analysis**

The most convincing clinical utility arguments are associated with the cost implications of the product, in addition to the impact on clinical practice. QURE can assess the economic implications of the OVA1® test directly from the CPV® data: the total costs of each completed vignette can be generated from CPT codes and the corresponding CMS payment schedules. Compared to evidence-based practices, inappropriate and unnecessary physician behaviors are aggregated and linked to specific dollar amounts for analysis on differences in costs between the control and intervention physician groups. Results are prepared and submitted for publication as the QURE team will work with preferred Vermillion specialists.


## Phase 2: Project Outline

Payors and CMS in particular have requested that clinical utility not be viewed as a one-off determination or a single study. There is specific interest in linking practice change, as measured by vignettes to patient outcomes, including utilization. Learning to tailor the value message requires additional data and studies that are also useful for sales and marketing. Knowing that it is a reasonable assumption, from Phase 1, that OVA1® will change clinical practice and demonstrate clinical utility and cost benefit (value) it is expected that Vermillion will require and want a Phase 2 study to show to payors.

Payors, looking for ongoing utility data, have asked QURE for follow-on Phase 2 study, which they find to be ironclad. In Phase 2, QURE takes those physicians identified from the Phase 1 intervention arm who adopted OVA1® and changed their practice and administer a third round of CPV® vignettes to link the CPV® practice change to changes in patient outcomes. The Phase 2 design groups the physicians from Phase 1 into adopters and non-adopters of OVA1® --those who used the test in the vignettes to guide their treatment decisions versus those that did not. For the adopters, we randomly select approximately 3-5 patients per provider. These patients are matched with an equivalent number of patients of non-adopters—gynecologists who did not use the test when offered. The hypotheses are:

**Ex. A**

1) *The patients of providers who used OVA1® will be more likely to have been referred to the appropriate gynecological oncologist surgeon and the costs of care will be lower than patients of those physicians that did not use OVA1® when offered.*

Should *OVA1®* prove successful in Phase 1, the Phase 2 study leverages the physician recruitment completed in Phase 1 and maintains the randomized trial design to provides rapid follow-on patient level data. This results in a significant savings to Vermillion: two RCT studies, evidence to CMS of ongoing clinical utility data collection and the rapid production (four months) of utility data for Vermillion.

## Pricing

QURE studies are priced depending on the number of participating providers, number of cases written, and the number of data collection rounds.  Based upon the above, the following prices apply:

| Item | Price | Initial for Acceptance |
|---|---|---|
| Phase 1 study: steps 1-5 as outlined above | $355,000 | *El* |
| Payer panel (optional) | $15,000 (now included) | *El* |
| Economic Study (optional) | $15,000 (now included) | *El* |
| OVA1® Experienced Users (optional) | $20,000 (excluded) | |
| Phase 2 study (optional) | $380,000 discounted to $250,000* | |
| **Total Phase 1** | $355,000 | |

*Pricing option extended until August 15, 2014

There are economies of scale to Vermillion and QURE by planning the Phase 2 study concurrent with the Phase 1 Study.  Accordingly, QURE passes along these discounted costs in the form of savings of ~1/3 price reduction for the Phase 2 study if agreed to upon signing the Phase 1 study. Phase 2, even if agreed to, is conditional upon Phase 1 demonstrating a change in clinical practice.  Payment terms for a Phase 1 and a Phase 2 study are
- 60% upfront upon launching
- 20% after Step 1 submission of protocol
- 10% after Step 3 administration of OVA1®
- 10% after submission of papers to Vermillion

**Ex. A**

*Non-QURE Costs.* Project-related expenses, including travel, telephone, and postage will be billed at cost and are not included in the estimate. Vermillion marketing is expected to work with the Vermillion scientific staff to 1) prepare the information on OVA-1® for distribution to the selected providers and to 2) provide the physician roster and recruit providers into the study.  Vermillion should, however, anticipate the following expenses. These estimates based upon QURE's experience with similar RCT trials for utility:

| Item | Detail/Breakdown | Total |
|---|---|---|
| Honoraria to member of the expert panel charged with reviewing and approving the study protocol | Three panel members at suggested honorarium payment of $1,500 each | $4,500 |
| Payer Panel Travel and Lodging Costs | Travel and hotel for three at $1,000/person | $3,000 |
| Fees related to any Institutional Review Board submission | IRB Submission is approximately $1,000 | $1,000 |
| Physician recruitment, including any honoraria payments to physicians participating in the study | Suggested honorarium payment of $200 for 2.5 hours 100 to 125 doctors | $50,000 to $62,500* |
| Travel to and from study sites and to Vermillion offices by QURE and Vermillion staff | Two trips, two staff members at $1,000 each | $4,000 |
| QURE Conference inscription fees and any related travel | TBD | Not applicable |
| Any article processing charges for manuscripts submitted to on-line journals for consideration (e.g. PLoS, BioMed Central) | $2,000 | TBD |
| TOTAL | | $62,500 to $75,000 |

- Costs expected to be lower based upon final sample size.

A signature authorizes billable work to begin on the terms listed in this document. Upon receipt of approval from Vermillion, QURE will begin work according to the timeline outlined herein. This Agreement may be signed in counterparts, each of which will be considered an original instrument, and which together will constitute a single agreement. Faxed or emailed signature will be binding.

Signed and agreed on the dates indicated below:

**Vermillion**                                              **QURE Healthcare, LLC**

Signature: _Eric Schoen_                    Signature: _John W Peabody_

Name: _Eric Schoen_                          Name: __John W Peabody MD, PhD

Title: _VP Finance & CAO_                  Title: __President_____

QURE Healthcare                 PROPRIETARY AND CONFIDENTIAL                 8

Ex. A

Date: ___4/21/14_____          Date: ___April 20, 2014_____

**Ex. A**

## Key Staff Biographies

### John Peabody, MD, PhD, FACP
**President and Founder**

Dr. Peabody is an international health care leader in measurement, health policy, health systems, and quality of clinical care. He has contributed to more than 200 peer-reviewed publications and several books on quality, measurement, economics and healthcare systems. An actively funded National Institutes of Health (NIH) researcher, Dr. Peabody works with clinical leaders, academic medical centers and multidisciplinary teams to help healthcare organizations better align their clinical staff. For almost two decades, he has examined how health systems affect, and potentially improve, care quality and patient outcomes. Dr. Peabody developed the globally adopted standard for measuring clinical practice variation, known now simply as CPV® vignettes, the pillar stone of QURE Healthcare. Dr. Peabody is a graduate of Stanford, UCSF and RAND and is presently on faculty as a Professor at UCSF and UCLA.

### Riti Shimkhada, PhD
**Senior Scientist**

Riti is a senior scientist at QURE responsible for modeling, sample frames and research design, specifically on data analysis and publications. She has over a decade of experience designing studies, sample frames, and using multi-level modeling in a variety of settings, internationally and locally. Her experience with CPV® vignettes has ranged from coordinating scoring to extensive data analysis of collected CPV® data. She has been involved in the designing the research methods for clinical and policy studies that use CPV® data as primary outcomes. She also has a decade of experience with Health Impact Assessment (HIA), examining the impacts of policies on population health. She has a large publication history in the peer-reviewed literature with articles appearing in the fields of epidemiology, health policy, international health, and environmental health.

### Lisa DeMaria, MA
**Project Manager**

Lisa has over 20 years experience studying health systems and healthcare quality, primarily in low- and middle-income settings. Prior to joining QURE she was a researcher and associate professor at Mexico's National Institute of Public Health. As part of her work there, she helped design the quality of care element of the large national surveys to evaluate the national poverty alleviation program, *Oportunidades*. She also worked to develop and implement studies to measure quality of care in the areas of maternal health, reproductive health, HIV and chronic disease. She has extensive international experience, having lived and worked in countries throughout Latin America, North Africa, and Asia.

**Ex. A**



1 | LAWRENCE J. HILTON (State Bar No. 156524)
lhilton@oneil-llp.com
2 | KATHLEEN A. DONAHUE (State Bar No. 294226)
kdonahue@oneil-llp.com
3 | O'NEIL LLP
19900 MacArthur Boulevard, Suite 1050
4 | Irvine, California 92612
Telephone: (949) 798-0500
5 | Facsimile: (949) 798-0511

6 | Attorneys for Defendant
VERMILLION, INC.
7



**FILED**

SEP 2 5 2014

KIM TURNER, Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: J. Chen, Deputy

8 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 | **FOR THE COUNTY OF MARIN**

10

11 | QURE HEALTHCARE, LLC, a California
Limited Liability Company,
12

13 | Plaintiff,

14 | v.

15 | VERMILLION, INC., and Does 1-20,

16 | Defendants.

Case No. CIV 1403265

**ANSWER TO UNVERIFIED
COMPLAINT**

Action Filed:      August 26, 2014

17

18

19 | For its Answer to the unverified Complaint (the "Complaint") of QURE Healthcare,

20 | LLC ("Plaintiff"), Defendant Vermillion, Inc. ("Defendant"), for itself and for no other

21 | defendant, hereby admits, denies and alleges as follows:

22 | <u>**GENERAL DENIAL**</u>

23 | Pursuant to the provisions of Code of Civil Procedure section 431.30, Defendant

24 | generally denies each and every allegation of the Complaint and each and every cause of

25 | action purportedly contained in the Complaint, and further denies that Plaintiff has been

26 | damaged in any manner whatsoever by any act or omission of Defendant or that Plaintiff is

27 | entitled to any recovery whatsoever from Defendant based upon the allegations of the

28 | Complaint.

#144505 v1

1

1

**AFFIRMATIVE DEFENSES**

2

FIRST AFFIRMATIVE DEFENSE

3

(Waiver)

4 Defendant alleges that the claims set forth in Plaintiff's Complaint are barred, in

5 whole or in part, by the doctrine of waiver.

6

SECOND AFFIRMATIVE DEFENSE

7

(Estoppel)

8 Defendant alleges that the claims set forth in Plaintiff's Complaint are barred, in

9 whole or in part, by the doctrine of estoppel.

10

THIRD AFFIRMATIVE DEFENSE

11

(Consent)

12 As a separate and distinct affirmative defense, Defendant alleges that all or portions

13 of the claims set forth in the Complaint are barred by the doctrine of consent.

14

FOURTH AFFIRMATIVE DEFENSE

15

(Statute of Limitations)

16 Defendant alleges that portions of Plaintiff's claims are barred by the applicable

17 statutes of limitations, including but not limited to Code of Civil Procedure sections 335.1,

18 338, 339, 340 and 343, and any other applicable statute of limitations.

19

FIFTH AFFIRMATIVE DEFENSE

20

(Unclean Hands)

21 Defendant alleges that all or portions of the claims set forth in the Complaint are

22 barred by the doctrine of unclean hands.

23

SIXTH AFFIRMATIVE DEFENSE

24

(Justification)

25 Defendant alleges that Plaintiff is barred from the relief sought in the Complaint

26 because the actions of Defendant were justified.

27

28

#144505 v1

ANSWER TO UNVERIFIED COMPLAINT

1

### SEVENTH AFFIRMATIVE DEFENSE

2

#### (Statute of Frauds)

3     Defendant alleges that the claims set forth in Plaintiff's Complaint are barred in

4 whole or, or in part, by the Statue of Frauds per California Commercial Code Section

5 2201, *et. seq.*

6

### EIGHTH AFFIRMATIVE DEFENSE

7

#### (Failure to Mitigate)

8     Defendant alleges that if Plaintiff has suffered, or will suffer, any loss, damage or

9 injury, it was directly or proximately caused by and is the result of its conduct and failure

10 to mitigate such loss, damage or injury.

11

### NINTH AFFIRMATIVE DEFENSE

12

#### (Doctrine of Laches)

13     Defendant alleges that the claims set forth in Plaintiff's Complaint are barred in

14 whole or in part, by the doctrine of laches.

15

### TENTH AFFIRMATIVE DEFENSE

16

#### (Failure to State Facts)

17     Defendant alleges that the claims set forth in Plaintiff's Complaint fail to state facts

18 sufficient to constitute a claim upon which relief can be granted.

19

### ELEVENTH AFFIRMATIVE DEFENSE

20

#### (Excuse)

21     Defendant alleges that any failure to perform by Defendant under any agreement

22 alleged in the Complaint was excused by the acts or omissions of Plaintiff.

23

### TWELFTH AFFIRMATIVE DEFENSE

24

#### (Additional Defenses)

25     Defendant presently has insufficient knowledge or information upon which to form

26 a belief as to whether it may have additional, as yet unstated, affirmative defenses

27 available. Defendant reserves the right to assert additional affirmative defenses in the

28 event discovery indicates that such additional defenses would be appropriate.

## PRAYER

**WHEREFORE**, Vermillion, Inc. prays for relief as follows:

1.    That Plaintiff take nothing by way of its Complaint;

2.    That judgment be entered in favor of Defendant on all causes of action alleged in the Complaint;

3.    For an award of costs and reasonable attorneys' fees; and

4.    For such other and further relief as the Court deems appropriate.

DATED:  September 24, 2014          O'NEIL LLP
                                    LAWRENCE J. HILTON
                                    KATHLEEN A. DONAHUE


                                    By:  _____
                                              Kathleen A. Donahue
                                    Attorneys for Defendant
                                    VERMILLION. INC.

#144505 v1

ANSWER TO UNVERIFIED COMPLAINT

1                                  **<u>PROOF OF SERVICE</u>**

2   **STATE OF CALIFORNIA, COUNTY OF ORANGE**

3         At the time of service, I was over 18 years of age and not a party to this action.  I
am employed in the County of Orange, State of California.  My business address is 19900

4   MacArthur Boulevard, Suite 1050, Irvine, CA 92612.

5         On September 24, 2014, I served true copies of the following document(s)
described as **ANSWER TO UNVERIFIED COMPLAINT** on the interested parties in

6   this action as follows:

7                          **SEE ATTACHED SERVICE LIST**

8         **BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed
to the persons at the addresses listed in the Service List and placed the envelope for

9   collection and mailing, following our ordinary business practices.  I am readily familiar
with the practice of  O'Neil LLP for collecting and processing correspondence for mailing.

10   On the same day that correspondence is placed for collection and mailing, it is deposited in
the ordinary course of business with the United States Postal Service, in a sealed envelope

11   with postage fully prepaid.  I am a resident or employed in the county where the mailing
occurred.  The envelope was placed in the mail at Irvine, California.

12

13         I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

14         Executed on September 24, 2014, at Irvine, California.

15

16                                 _____

17                             Shaun A. Simmons

18

19

20

21

22

23

24

25

26

27

28

1                               **SERVICE LIST**

2

3   Andrew A. August
    Kevin F. Rooney
    BROWNE GEORGE ROSS LLP

4   121 Spear Street, Suite 200
    San Francisco, CA 94105

5

6   *Attorneys for Plaintiff*
    *QURE Healthcare, LLC*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Orange, State of California.  My business address is 19900 MacArthur Boulevard, Suite 1050, Irvine, CA 92612.

On September 26, 2014, I served true copies of the following document(s) described as **DEFENDANT VERMILLION, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 29 U.S.C. §§ 1332, 1441 AND 1446 (DIVERSITY JURISDICTION)** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with the practice of O'Neil LLP for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.  I am a resident or employed in the county where the mailing occurred.  The envelope was placed in the mail at Irvine, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 26, 2014, at Irvine, California.

Shaun A. Simmons

1

**SERVICE LIST**

2

Andrew A. August

3 Kevin F. Rooney
BROWNE GEORGE ROSS LLP
4 121 Spear Street, Suite 200
San Francisco, CA 94105
5

*Attorneys for Plaintiff*
6 *QUIRE Healthcare, LLC*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28